**ORAL ARGUMENT NOT YET SCHEDULED**

**Nos. 15-7135, 15-7136**

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA, EX REL. STEPHEN M. SHEA,

*Plaintiff-Appellant/Cross-Appellee*,

*v.*

CELLCO PARTNERSHIP, DOING BUSINESS AS VERIZON WIRELESS; VERIZON BUSINESS NETWORK SERVICES INC.; VERIZON FEDERAL INC.; MCI COMMUNICATIONS SERVICES INC., DOING BUSINESS AS VERIZON BUSINESS SERVICES,

*Defendants-Appellees/Cross-Appellants*.

On Appeal from the United States District Court
for the District of Columbia, No. 1:09-cv-1050 (Kessler, J.)

**PRINCIPAL AND RESPONSE BRIEF**
**FOR DEFENDANTS-APPELLEES/CROSS-APPELLANTS**

SETH P. WAXMAN
JONATHAN G. CEDARBAUM
DANIEL WINIK
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000
(202) 663-6363 (fax)
seth.waxman@wilmerhale.com

May 11, 2016

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Defendants-Appellees/Cross-Appellants certify as follows:

### A.    Parties and Amici

Plaintiff-Appellant/Cross-Appellee Stephen M. Shea appeared before the district court and is a party in this Court.

Defendants-Appellees/Cross-Appellants Verizon Business Network Services Inc., Verizon Federal Inc., MCI Communications Services Inc. d/b/a Verizon Business Services, and Cellco Partnership d/b/a Verizon Wireless appeared before the district court and are parties in this Court.

The United States did not intervene in district court (Notice Of The United States That It Is Not Intervening At This Time (Nov. 30, 2011) (Dkt. 26)), but did file a Statement of Interest "request[ing] that if the Court dismisses this action, that such dismissal be without prejudice to the United States" (United States' Statement Of Interest 4 (Oct. 25, 2012) (Dkt. 56)).  The United States appeared as an amicus curiae before this Court in a prior appeal in this case (No. 12-7133).

The Chamber of Commerce of the United States of America appeared before this Court as an amicus curiae in a prior appeal in this case (No. 12-7133).

### B.    Rulings Under Review

The rulings under review are the October 6, 2015 order of the district court (Kessler, J.) dismissing this action without prejudice (Dkt. 88) and the corresponding Memorandum Opinion (Dkt. 87), available at 2015 WL 7769624.

### C.    Related Cases

This case was previously before this Court in *United States ex rel. Shea v. Cellco Partnership*, No. 12-7133.

A related case brought by Plaintiff-Appellant-Cross-Appellee Shea against Verizon Communications Inc. was previously before the district court.  *See United States ex rel. Shea et al. v. Verizon Communications Inc.*, No. 1:07-cv-0111 (D.D.C. filed Jan. 17, 2007).  The United States intervened in that case, and the parties reached a settlement agreement in 2011 that did not include any admission of liability.  The United States filed an appeal to this Court of the district court's final judgment allocating settlement proceeds in the related case, but voluntarily dismissed that appeal.  *See* Order, *United States ex rel. Shea v. Verizon Communications Inc.*, No. 12-5215 (July 13, 2012).

Defendants-Appellees/Cross-Appellants are aware of two cases involving a similar issue:  *PharMerica Corp. v. United States ex rel. Gadbois*, No. 15-1309 (S. Ct.) and *United States ex rel. Carter v. Halliburton Co.*, No. 16-1262 (4th Cir.).

<table>
<tr><td></td><td>/s/  Seth P. Waxman</td></tr>
<tr><td>May 11, 2016</td><td>SETH P. WAXMAN</td></tr>
</table>

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Defendants-Appellees/Cross-Appellants state as follows:

Cellco Partnership has four partners, all of which are indirectly owned by Verizon Communications Inc.  None of the partners controls a majority interest in Cellco Partnership.  The only publicly held company that has a 10% or greater ownership interest in Cellco Partnership is Verizon Communications Inc.

Verizon Business Network Services Inc. is owned by MCI Communications Corporation, which is owned by Verizon Business Global LLC, which is owned by Verizon Communications Inc.

MCI Communications Services Inc. is owned by MCI Broadband Solutions, Inc., which is owned by Terremark Worldwide, Inc., which is owned by Verizon Business Network Services Inc., which is owned by MCI Communications Corporation, which is owned by Verizon Business Global LLC, which is owned by Verizon Communications Inc.

Verizon Federal Inc. is owned by Verizon Ventures LLC, which is owned by Verizon Communications Inc.

As relevant to the litigation, Cellco Partnership, Verizon Business Network Services Inc., MCI Communications Services Inc., and Verizon Federal Inc. are telecommunications service providers.

/s/  Seth P. Waxman
SETH P. WAXMAN

May 11, 2016

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED
    CASES ...................................................................................i

CORPORATE DISCLOSURE STATEMENT ...................................... iii

TABLE OF AUTHORITIES ................................................... vii

GLOSSARY ........................................................................ xiii

INTRODUCTION ................................................................1

JURISDICTIONAL STATEMENT ...........................................3

STATEMENT OF ISSUES ....................................................4

RELEVANT STATUTES ......................................................4

STATEMENT OF FACTS .....................................................5

    A.    *Verizon I* ..........................................................5

    B.    *Verizon II* .........................................................6

    C.    Dismissal Of *Verizon II* And Subsequent Appeals ...........11

    D.    Further District Court Proceedings ...................................12

SUMMARY OF ARGUMENT ...............................................15

STANDARD OF REVIEW ...................................................17

ARGUMENT ...................................................................17

I.    THIS ACTION SHOULD HAVE BEEN DISMISSED WITH PREJUDICE
    UNDER THE PUBLIC DISCLOSURE BAR .......................................17

    A.    The Pre-2010 Version Of The Public Disclosure Bar
        Applies.....................................................................18

B.    It Is Immaterial Which Version Of The Bar Applies ..........................19

C.    The Material Elements Of The Alleged Fraud Were Disclosed By Publicly Available Contracts And Mock-Up Invoices ........................................................................21

D.    Shea's Supposed "Insider" Contributions Were At Most Cumulative ........................................................................26

E.    Shea Cannot Qualify As An Original Source .....................................29

II.    THIS ACTION SHOULD HAVE BEEN DISMISSED WITH PREJUDICE BECAUSE SHEA FAILED TO PLEAD HIS ALLEGATIONS WITH SPECIFICITY ...............................................................................32

A.    The SAC Failed To Identify Any Details Of The Alleged Fraud ........................................................................33

B.    Shea Would Have No Basis To Amend His Complaint .....................37

III.    AT A MINIMUM, THE DISTRICT COURT WAS CORRECT TO DISMISS THIS ACTION UNDER THE FIRST-TO-FILE BAR.................................40

A.    The Plain Text Of The First-To-File Bar Requires Dismissal Of The Action, Not Just The Complaint ...........................41

B.    Shea's Arguments Fail To Give Meaning To The Statutory Text ........................................................................44

CONCLUSION ........................................................................53

CERTIFICATE OF COMPLIANCE

STATUTORY ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES[*]

## CASES

Page(s)

*3M Co. v. Boulter*, 290 F.R.D. 5 (D.D.C. 2013)..........................................................4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................33

*Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996)..........................37

*Black v. Secretary of Health & Human Services*, 93 F.3d 781
(Fed. Cir. 1996)..................................................................................................48

*Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001) ........................................38

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994)............................................................................................43

* *Central Pines Land Co. v. United States*, 697 F.3d 1360 (Fed. Cir.
2012) ..............................................................................................47, 48, 49

*Chandler v. D.C. Department of Corrections*, 145 F.3d 1355 (D.C.
Cir. 1998) ....................................................................................................41, 42

*Ciralsky v. CIA*, 355 F.3d 661 (D.C. Cir. 2004) ......................................3, 13, 42

*Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010)...................40

*Fernandez v. Centerplate/NBSE*, 441 F.3d 1006 (D.C. Cir. 2006) ........................21

*Goldenberg v. Murphy*, 108 U.S. 162 (1883) ....................................................41, 42

*Graham County Soil & Water Conservation District v. United States
ex rel. Wilson*, 559 U.S. 280 (2010) ........................................................18, 25

*Hallstrom v. Tillamook County*, 493 U.S. 20 (1989)..............................................48

* *Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000) ..............................................49, 50

---

[*] Authorities upon which we chiefly rely are marked with asterisks.

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999) ...................................................................................39

*Janko v. Gates*, 741 F.3d 136 (D.C. Cir. 2014) .......................................41

*Kellogg Brown & Root Services, Inc. v. United States ex rel. Carter*, 134 S. Ct. 2899 (2014)...................................................................12

*Kellogg Brown & Root Services, Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970 (2015).............................................................12, 51

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271 (D.C. Cir. 1994)............17, 39

*Lamie v. United States Trustee*, 540 U.S. 526 (2004) ..............................51

*Matthews v. Diaz*, 426 U.S. 67 (1976) .......................................................48

*McNeil v. United States*, 508 U.S. 106 (1993)..........................................48

*Performance Coal Co. v. Federal Mine & Safety & Health Review Commission*, 642 F.3d 234 (D.C. Cir. 2011)...................................43

*Pinson v. U.S. Department of Justice*, 69 F. Supp. 3d 108 (D.D.C. 2014) ...................................................................................46

*Rockwell International Corp. v. United States*, 549 U.S. 457 (2007) .....28, 45, 46, 52

*Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401 (2011).................................................................................18

*Sea-Land Service, Inc. v. Department of Transportation*, 137 F.3d 640 (D.C. Cir. 1998) ...........................................................................3

*United States ex rel. Advocates for Basic Legal Equality, Inc. v. U.S. Bank, N.A.*, 816 F.3d 428 (6th Cir. 2016)......................................20

*United States ex rel. Beauchamp v. Academi Training Ctr.*, 816 F.3d 37 (4th Cir. 2016) ...................................................................21, 22

*United States ex rel. Boise v. Cephalon, Inc.*, 2016 WL 398014 (E.D. Pa. Feb. 2, 2016) .................................................................47

\* *United States ex rel. Branch Consultants, L.L.C. v. Allstate Insurance Co.*, 782 F. Supp. 2d 248 (E.D. La. 2011)..............................43, 46

*United States ex rel. Carter v. Bridgepoint Education, Inc.*, 2015 WL 4892259 (S.D. Cal. Aug. 17, 2015) ...............................................19

\* *United States ex rel. Carter v. Halliburton Co.*, 2015 WL 7012542 (E.D. Va. Nov. 12, 2015)......................................................43, 46

*United States ex rel. Carter v. Halliburton Co.*, 2016 WL 634656 (E.D. Va. Feb. 17, 2016)........................................................43, 47

*United States ex rel. Clausen v. Laboratory Corp. of America*, 290 F.3d 1301 (11th Cir. 2002) ....................................................39

\* *United States ex rel. Davis v. District of Columbia*, 679 F.3d 832 (D.C. Cir. 2012) ..............................................................25

*United States ex rel. Dhillon v. Endo Pharmaceuticals*, 617 F. App'x 208 (3d Cir. 2015)...........................................................46

\* *United States ex rel. Doe v. Staples, Inc.*, 773 F.3d 83 (D.C. Cir. 2014) .................................................................17, 24, 27, 28, 29

*United States ex rel. Estate of Cunningham v. Millennium Laboratories of California, Inc.*, 713 F.3d 662 (1st Cir. 2013) ...................18

\* *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675 (D.C. Cir. 1997)...............................................28, 30

*United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 568 (10th Cir. 1995) ...............................................................25

*United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1 (1st Cir. 2015) ...............................................................46, 48

*United States ex rel. Green v. Service Contract Education & Training Trust Fund*, 843 F. Supp. 2d 20 (D.D.C. 2012)...........................................22

*United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214 (D.C. Cir. 2003).......................................................37

*United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112 (D.C. Cir. 2015) .......................................................................17, 33, 35, 36, 44

*United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322 (5th Cir. 2011) .....................................................................................18

*United States ex rel. Joshi v. St. Luke's Hospital, Inc.*, 441 F.3d 552 (8th Cir. 2006) .....................................................................................40

*United States ex rel. Karvelas v. Melrose-Wakefield Hospital*, 360 F.3d 220 (1st Cir. 2004)...........................................................38

*United States ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075 (8th Cir. 2014) ..............................................21, 32

*United States ex rel. Kurnik v. PharMerica Corp.*, 2015 WL 1524402 (D.S.C. Apr. 2, 2015)........................................................47

*United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294 (3d Cir. 2016) ..............................................21

* *United States ex rel. Moore v. Pennrose Properties, LLC*, 2015 WL 1358034 (S.D. Ohio Mar. 24, 2015)......................................43, 46

*United States ex rel. Oliver v. Philip Morris USA Inc.*, 763 F.3d 36 (D.C. Cir. 2014) ................................................................18, 22

*United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805 (11th Cir. 2015) .................................................................................21, 32

*United States ex rel. Palmieri v. Alpharma, Inc.*, 928 F. Supp. 2d 840 (D. Md. 2013) ..................................................................47

*United States ex rel. Paulos v. Stryker Corp.*, 762 F.3d 688 (8th Cir. 2014) .....................................................................................32

* *United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913 (D.C. Cir. 1999) ...................................................15, 24, 26, 27

* *United States ex rel. Soodavar v. Unisys Corp.*, 2016 WL 1367163 (E.D. Va. Apr. 5, 2016) ...................................43, 46, 47, 48, 52

\* *United States ex rel. Springfield Terminal Railway Co. v. Quinn*,
　　14 F.3d 645 (D.C. Cir. 1994)............. 1, 13, 15, 16, 22, 23, 24, 25, 27, 28, 30

\* *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d
　　1251 (D.C. Cir. 2004) .................................................................17, 33, 35, 36

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d
　　370 (4th Cir. 2008) ......................................................................................38

*United States v. Alcan Electrical & Engineering, Inc.*, 197 F.3d 1014
　　(9th Cir. 1999) .............................................................................................25

*United States v. Chattanooga-Hamilton County Hospital Authority*,
　　782 F.3d 260 (6th Cir. 2015) .......................................................................25

*United States v. Science Applications International Corp.*, 626 F.3d
　　1257 (D.C. Cir. 2010) ..................................................................................35

## STATUTES AND RULES

28 U.S.C.
　　§ 1291 ...........................................................................................................3
　　§ 1331 ...........................................................................................................3
　　§ 1500 ...................................................................................................48, 49

31 U.S.C.
　　§ 3730(b)(2) .................................................................................................43
　　§ 3730(b)(5) ........................................................... 2, 4, 13, 17, 41, 47, 49
　　§ 3730(e)(4)(A) (2009) ...........................................................................19, 22
　　§ 3730(e)(4)(A) (2012) ...........................................................................20, 22
　　§ 3730(e)(4)(B) (2009) ...............................................................................30
　　§ 3730(e)(4)(B) (2012) ...............................................................................31
　　§ 3732(a) .......................................................................................................3

42 U.S.C. § 1997e(e)..............................................................................................49

Fed. R. Civ. P.

Rule 8 ................................................. 2, 4, 11, 12, 14, 16, 17, 32, 33, 37, 40
Rule 9 ................................. 2, 4, 11, 12, 14, 16, 17, 32, 33, 36, 37, 38, 39, 40
Rule 12(b)(1) ........................................................................................24, 44
Rule 12(b)(6) ...................................................................................20, 44, 45
Rule 12(d) ...................................................................................................21
Rule 15(d) ...........................................................................................46, 47, 50

## OTHER AUTHORITIES

*Black's Law Dictionary* (10th ed. 2014)..................................................................41

# GLOSSARY

| | |
|---|---|
| **FCA** | The False Claims Act, 31 U.S.C. §§ 3729 *et seq.* |
| **GSA** | General Services Administration |
| **SAC** | Plaintiff-Appellant/Cross-Appellee Shea's Second Amended Complaint in this action |
| ***Verizon I*** | Shea's first qui tam suit against Verizon, *United States ex rel. Shea v. Verizon Communications Inc.*, No. 07-cv-111 (D.D.C. filed Jan. 17, 2007) |
| ***Verizon II*** | The action giving rise to this appeal, *United States ex rel. Shea v. Verizon Business Network Services Inc.*, No. 09-cv-1050 (D.D.C. filed June 5, 2009) |

# INTRODUCTION

"[I]n drafting and amending the qui tam provisions" of the False Claims Act (FCA), Congress sought to provide "adequate incentives for whistle-blowing insiders with genuinely valuable information," while "discourag[ing] opportunistic plaintiffs who have no significant information to contribute of their own." *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994). In many cases finding that "golden mean" (*id.*) is difficult. In this case, it is not. Congress could hardly have had in mind a more "opportunistic" action than this one.

Shea filed his first qui tam action against Verizon (*Verizon I*) in 2007, alleging that the company had billed the federal government for prohibited surcharges under one contract and its extension. Shea was no insider; he had never worked for Verizon, any of its predecessors, or the government, and had no direct involvement in federal telecommunications contracts. Nonetheless, after the United States intervened and settled with Verizon, Shea received $18.9 million for his role.

Shea now seeks *another* bounty for this case, filed in 2009, which simply repeats the *Verizon I* claims for an additional twenty contracts that Shea acknowledges he discovered through Internet searches. Alleging only the barest information about Verizon's billing practices, Shea openly admits that he cobbled

together this suit by searching publicly accessible websites for contracts and sample invoices.  His complaint provides no specifics about Verizon's alleged billing practices or about the contractual provisions that supposedly prohibited them.  To the contrary, Shea admitted that he hoped to learn all that from discovery.

The district court erred in refusing to end this action by dismissing it with prejudice under the FCA's public-disclosure bar or Rules 8 and 9(b) of the Federal Rules of Civil Procedure.  Congress reserved qui tam bounties for relators who offer the government something meaningful in return, by notifying the government of fraud of which it was not previously aware.  This litigation—based on publicly available contracts and mock invoices, with no specifics beyond what Shea found online—brought nothing to the government's attention.  A qui tam reward for this action would be a windfall at the expense of the public fisc, not the type of fair bargain authorized by Congress.

At a minimum, the district court was correct to dismiss this action without prejudice under the first-to-file bar.  Shea contends that he successfully evaded the first-to-file bar by amending his complaint after the dismissal of *Verizon I*, but he does not attempt the futile exercise of trying to reconcile that argument with the statutory text, which provides that no relator may "*bring*" an "action" while a related action remains pending.  31 U.S.C. § 3730(b)(5) (emphasis added).  Shea

- 2 -

brought this action, by filing the initial complaint, while *Verizon I* remained pending. As the district court recognized, no amendment to the complaint can change that fact, and therefore no amendment can save the action from dismissal.

## JURISDICTIONAL STATEMENT

The district court lacked jurisdiction under the version of the FCA's public disclosure bar (31 U.S.C. § 3730(e)(4) (2009)) that applies to this action. Jurisdiction would otherwise have been proper under 28 U.S.C. § 1331, because this action arises under federal law, and § 3732(a), because it arises under the FCA.

The district court dismissed this action on October 6, 2015. Dkt. 88. Shea filed a timely Notice of Appeal on November 3, 2015 (JA361), and Verizon filed a timely Notice of Cross-Appeal on November 5, 2015 (JA363).

Like the district court, this Court lacks jurisdiction under the FCA's public disclosure bar. Otherwise, this Court would have jurisdiction to review both the appeal and the cross-appeal under 28 U.S.C. § 1291. Jurisdiction over Shea's appeal is proper because the district court dismissed his action rather than merely his complaint, even though the dismissal was without prejudice to his filing of another action. *See Ciralsky v. CIA*, 355 F.3d 661, 666 (D.C. Cir. 2004). Jurisdiction over Verizon's cross-appeal is proper because Verizon sought, and the district court denied, a dismissal *with* prejudice. *See Sea-Land Serv., Inc. v. Dep't*

*of Transp.*, 137 F.3d 640, 647 n.4 (D.C. Cir. 1998); *3M Co. v. Boulter*, 290 F.R.D. 5, 9 (D.D.C. 2013) (Wilkins, J.).

## STATEMENT OF ISSUES

Shea's appeal presents one issue:

(1)     Did the district court properly dismiss this action without prejudice under the FCA's first-to-file bar (31 U.S.C. § 3730(b)(5)), given that a related action was pending when Shea filed his initial complaint in this action?

Verizon's cross-appeal presents two issues:

(2)     Should the district court have dismissed this action with prejudice under the FCA's public disclosure bar (31 U.S.C. § 3730(e)(4)), given that Shea obtained both the contracts Verizon is alleged to have breached and sample invoices reflecting the alleged breaches from the Internet?

(3)     Should the district court have dismissed this action with prejudice under Rules 8 and 9(b) of the Federal Rules of Civil Procedure, given that Shea relied on the hope of discovery to fill in details of the fraud he alleged?

## RELEVANT STATUTES

The statutory provisions relevant to this appeal are set forth in an addendum following this brief.

- 4 -

## STATEMENT OF FACTS

**A.    *Verizon I***

Shea filed his first qui tam action against Verizon in January 2007.  JA212-

231.  That complaint alleged "the knowing submission to the United States of

certain prohibited surcharges under contracts to provide telecommunications

services" to the General Services Administration (GSA).  JA213.  It addressed two

contracts: the FTS2001 Contract and the FTS2001 Bridge Contract.  *Id.*

Shea claimed that, through his experience as "a private telecommunications

consultant to" large corporations, he "became aware" that MCI, one of Verizon's

predecessors, had a "practice of … billing corporate clients not only for federal,

state and local taxes levied on the customer but also for surcharges (often labeled

as, or lumped together with, taxes)."  JA215.  Shea had never worked for Verizon,

MCI, or the federal government, and had no direct involvement in federal

telecommunications contracts.  JA154-155.  But he claimed that in "2004, [he]

received an MCI document that purported to show 'the taxes and surcharges that

the Federal Government is responsible for'" under the FTS2001 and FTS2001

Bridge contracts.  JA226.  Shea asserted that "MCI appear[ed] to have been

invoicing the United States in the same way it invoiced many of its commercial

clients notwithstanding the terms of the FTS2001 Contract and governing [Federal

Acquisition Regulation]" and that "MCI used the same billing platform that it

used for enterprise [or corporate] customers to bill the United States without modifying its systems to reflect the terms of the FTS2001 Contract." JA227. He claimed that Verizon continued these practices after merging with MCI in 2006. JA226, 228.

The United States intervened, and the parties settled in February 2011 without any admission of liability. JA97. Shea's relator's share was approximately $18.9 million. Judgment, No. 07-cv-111 (D.D.C. May 1, 2012) (Dkt. 77).

### B.    *Verizon II*

After filing *Verizon I*, Shea received no new inside information about Verizon's contracts or alleged billing practices. By searching the Internet, however, he found the names and numbers of additional Verizon contracts, as well as excerpts from a few of the contracts and limited billing information, such as "mock-up" invoices used for training. JA155-156, 159, 162. Although *Verizon I* remained pending, Shea did not seek to amend his complaint to add allegations relating to these additional contracts. Instead, he filed this action under seal on June 5, 2009. JA13-32. Verizon learned that Shea had filed this action only shortly before the *Verizon I* settlement was to be finalized in February 2011.

Shea's 2009 complaint was strikingly similar to his 2007 complaint. Shea again alleged that Verizon "knowingly submits claims to the United States for

- 6 -

payment of illegal surcharges under contracts to provide telecommunication services." JA13-14; *cf.* JA213. He again claimed to have discovered the supposed fraud "through his extensive work as a private telecommunications consultant to Fortune 100 companies." JA18; *cf.* JA215. He repeated his allegation that MCI and Verizon were "billing corporate clients not only for federal, state and local taxes levied on the customer but also for surcharges (often labeled as, or lumped together with, taxes)." JA18-19; *cf.* JA215. He relied on the very same pre-merger "MCI document that purported to show 'the taxes and surcharges that the Federal Government is responsible for.'" JA23; *cf.* JA226. And he again alleged that "Verizon is invoicing the United States in the same way that it invoices many of its business customers notwithstanding the governing [Federal Acquisition Regulation] or applicable contracts." JA29; *cf.* JA226-228.

Shea framed this action as simply a continuation of *Verizon I*, alleging that "Verizon's pattern and practice of submitting false claims extends beyond" the two contracts named in *Verizon I* to encompass "multiple contracts including, but not limited to" two additional GSA contracts and unspecified contracts with other agencies. JA16. Unsurprisingly, given the similarities noted above, Shea designated this action as "related" to *Verizon I* under the district court's rules. JA34.

In November 2011, the United States informed the district court that it was "not intervening at this time" in *Verizon II*.  JA35-36.  The suit was unsealed on March 29, 2012.  JA5.

Shea amended his complaint in this action on July 26, 2012, now listing a total of 20 contracts by name and number, but giving no information beyond that for 17 of them.  He then filed a Second Amended Complaint (SAC) on September 12, 2012, making no further changes other than to substitute three of Verizon's subsidiaries as defendants.  JA45-63.  Like the 2009 complaint, the SAC acknowledges that this action is "related" to *Verizon I* (JA48) and extends the *Verizon I* allegations to additional contracts and Verizon affiliates.  Once again, it alleges that Shea discovered the purported fraud while "consulting with large commercial telecommunications customers" (JA47; *cf.* JA18-19 (2009); JA215 (2007)); that, as a consultant, he learned MCI and Verizon "had a custom and practice of charging" certain taxes and surcharges to their commercial clients (JA47; *cf.* JA18-19 (2009); JA215 (2007)); and that "MCI/Verizon overcharged the United States, just like its commercial customers" (JA47; *see* JA52; *cf.* JA19 (2009); JA215-216 (2007)).

Like the 2007 and 2009 complaints, the SAC traces Shea's supposed insider knowledge to his 2004 receipt of an "MCI document," predating the Verizon-MCI merger, "indicating that the company was charging the Government for regulatory

fee surcharges, and various state taxes."  JA47; *cf.* JA23-24 (2009); JA226 (2007).

The SAC further alleges—again like the prior complaints, but this time referencing

an unnamed "former Verizon employee"—that "Verizon did not have a separate

billing system for federal customers and commercial customers."  JA52; *cf.* JA29

(2009); JA227-228 (2007).  The SAC then asserts that Shea's allegations apply not

only to the contracts directly at issue in *Verizon I*, but also to twenty additional

contracts between Verizon and several federal agencies.  JA52-54.

     The SAC provides no specifics, however, in support of Shea's general

allegation that Verizon committed fraud with respect to the listed contracts.  Shea

acknowledged in a deposition that the only material information he possesses about

those twenty contracts or the relevant Verizon billing practices is publicly available

on "various websites."  JA155-156; *see also, e.g.*, JA156 ("off the internet");

JA160 ("from the internet"; "on the internet"); JA162 (explaining that "you just

stick [the contract numbers] in Google" to find "mock-up" invoices); JA162-166

("online" seventeen times); JA175 ("online"); JA176 ("from the web"); JA177

("on the internet"; "online"); JA178 ("[o]n the internet"; "on Verizon's website");

JA180, 181, 184, 186, 187 ("online").  Shea never had *any* insider access either to

the contracts themselves or to any invoices, or mock-up invoices, supposedly

showing Verizon had charged the government for taxes or fees not permitted by

the contracts.

Furthermore, although Shea himself acknowledged that "different contracts have different surcharge provisions" (JA161), the SAC provides no details about seventeen of the twenty contracts; it identifies them only by name and number. Indeed, Shea conceded in his deposition that he does not "have a hundred percent of *any* [of the] contracts" (JA181 (emphasis added)); he has reviewed only "bits and pieces" of some of the contracts he obtained on the Internet (JA157; *see also, e.g.*, JA160 ("chunks" of a contract); JA163, 175 (similar); JA179 ("I have not read every single one of these contracts in their entirety because I don't have them.").

Nor does the SAC allege any specifics of Verizon's allegedly improper billing. It does not identify the purportedly false claims, much less their amounts, the circumstances of their submission, or the people involved in submitting them. To the contrary, Shea acknowledged at his deposition that he hopes to rely on discovery to fill in even basic elements of the fraud he alleges. *See, e.g.*, JA198 ("I don't know what I don't know. But … when we see the documents and the invoicing we're going to know."); *see also* JA157 ("I don't know if I've reviewed the actual contract. I think that's the—one of the documents that we've asked for, for you guys to give us to see."); JA159 ("I haven't read and seen every—every single full whole contract. And I'm—I'm anticipating to see that."); JA177 ("I'm looking forward to reading them.").

### C.      Dismissal Of *Verizon II* And Subsequent Appeals

Verizon moved to dismiss Shea's suit under the first-to-file bar, the public-disclosure bar, and Rules 8 and 9(b).

The district court dismissed Shea's suit under the first-to-file bar (JA94-113), reasoning that the manifest similarities between the complaints in the two actions "clearly demonstrate[] that the allegations in *Verizon II* are based on the same material facts alleged in *Verizon I*" (JA110).  Shea moved to clarify or amend the order to provide that the dismissal was without prejudice.  JA8; *see* Dkt. 60-1.  The district court denied that motion and entered a judgment expressly dismissing the case "with prejudice" as to Shea.  JA114-115.  The court did not address whether dismissal was also appropriate under the public-disclosure bar or Rules 8 and 9(b).  JA112.

This Court affirmed.  JA116-140.  The panel unanimously agreed that *Verizon I* and *Verizon II* were "related" within the meaning of the first-to-file bar, explaining that "*Verizon I* would suffice to equip the government to investigate Shea's expanded allegations in *Verizon II*."  JA121-123.  And it unanimously rejected Shea's argument that the first-to-file bar does not apply when the same relator files both actions.  JA123-124.  A majority further held that the district court was correct to dismiss Shea's suit with prejudice, because the first-to-file bar continues to apply even after the pendency of the first-filed suit.  JA124-127.

- 11 -

Judge Srinivasan dissented on that point.  JA129-140.  The Court denied rehearing en banc.  JA141.

Several months after the panel decision, the Supreme Court granted certiorari to consider the issue that had divided the panel in this case.  *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 134 S. Ct. 2899 (2014) (mem.).  The Court held, consistent with the panel dissent, that the first-to-file bar ceases to require dismissal with prejudice once the first-filed suit is no longer pending.  135 S. Ct. 1970 (2015).  The Court then granted Shea's petition for certiorari, vacated this Court's opinion, and remanded for consideration in light of *Carter*.  JA143.  This Court remanded the case to the district court.  JA144.

### D.    Further District Court Proceedings

On remand, Verizon filed a renewed motion to dismiss on several grounds.  First, Verizon argued that the first-to-file bar still requires the dismissal of this action; *Carter* simply clarifies that the dismissal should be without prejudice to Shea's filing of a new action.  Second, Verizon renewed its prior arguments that the action should be dismissed *with* prejudice under the public disclosure bar and Rules 8 and 9(b) of the Federal Rules of Civil Procedure.

Agreeing with Verizon's first argument, the district court dismissed the action without prejudice under the first-to-file bar.  JA326-360.  The court rejected Shea's argument that the bar does not apply because *Verizon I* was no longer

pending when he filed his SAC.  JA351-356.  "Once an FCA action is pending,"

the court explained, "the first-to-file bar provides that 'no person … may … *bring*

*a related action* based on the facts underlying the pending action.' 31 U.S.C.

§ 3730 (b)(5).  What offends the first-to-file bar is the bringing of the action (*i.e.*,

filing an initial complaint)."  JA354 (emphasis added).  The court observed that

this holding was consistent with those of other district courts (*id.*) and with the

distinction this Court has drawn between complaints and actions (JA355-356

(citing *Ciralsky v. CIA*, 355 F.3d 661, 666 (D.C. Cir. 2004)).  "No matter how

many times Plaintiff amends his Complaint," the court observed, "it will still be

true that he 'br[ought] a related action based on the facts underlying the [*then*]

*pending* action.'"  JA356.  The court therefore held that the first-to-file bar

therefore requires dismissal (without prejudice) of this action, not just the SAC.

     The court rejected Verizon's arguments that the action should be dismissed

with prejudice under the public disclosure bar.  JA338-351.  The court recognized

that Shea's "allegations about the contracts at issue and the surcharges they

prohibit mirror publicly available information."  JA345.  Thus, applying the rule

that the public disclosure of fraudulent "'transactions'" must include the disclosure

of both "a misrepresented state of facts" and "a true state of facts" (*United States*

*ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 655 (D.C. Cir. 1994)),

the court determined that the *true* state of facts here "has quite clearly been

publicly disclosed." JA346.  But the court concluded that Verizon's alleged

misrepresentation—*i.e.*, its supposedly improper billing practices—"had not been

publicly disclosed." *Id.*  The court reasoned that even though Shea had

acknowledged the publicly available "mock-up invoices" gave him "'enough

information to know what surcharges'" Verizon was imposing, those invoices were

insufficient to qualify as public disclosures of Verizon's allegedly fraudulent

billing practices.  JA347-348.  The court's rationale was that the mock-ups on their

own would not have permitted the government to "infer that [Verizon] *actually*

*submitted* unlawful charges."  JA347 (emphasis added); *see also* JA348 ("[T]he

mock-up invoices alone would probably not give rise to an inference that the

Government *was actually billed*." (emphasis added)).

     The district court also declined to dismiss the complaint with prejudice for

failure to plead fraud claims with particularity, as required by Rules 8 and 9(b).

JA357-359.  The court determined that because it was already dismissing the case

without prejudice under the first-to-file bar, it did not need to decide whether

Shea's complaint actually complied with the pleading standards; rather, it needed

to reach only the question whether Shea would be entitled to amend his complaint

if it were insufficient to meet the pleading standards.  JA357.  Declining to

consider Shea's deposition testimony that he was relying on discovery to learn the

details of the alleged fraud, the court concluded that it was hypothetically possible

for Shea to "cure any deficiency in the SAC's factual allegations" by re-pleading. JA359.

Shea timely appealed the dismissal of his action.  JA361.  Verizon timely cross-appealed the district court's decision to dismiss the action without prejudice rather than with prejudice.  JA363.

## SUMMARY OF ARGUMENT

The Court should remand for this action to be dismissed with prejudice.

*First*, this is a paradigmatic case for application of the public disclosure bar. Shea acknowledged that public websites taught him almost everything he knows about the contracts and billing practices alleged in the SAC.  The district court rightly recognized that the contracts were publicly disclosed, but it erred in determining that the alleged billing practices were not publicly disclosed because the mock-up invoices available online were not independently sufficient to prove that Verizon "*actually submitted* unlawful charges" (JA347 (emphasis added)).  As this Court has made clear, "[t]here is no requirement … that the relevant public disclosures irrefutably prove a case of fraud" in order to bar a qui tam action. *United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 919 (D.C. Cir. 1999).  They need only "set government investigators on the trail of fraud." *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 655 (D.C. Cir. 1994).  The online contracts and mock-up invoices met that standard, and the

only bits of insider information Shea claimed to add—the 2004 MCI document and the tip from a former Verizon employee—were at best cumulative. That is not enough to evade the public disclosure bar: "[A] *qui tam* action cannot be sustained where all of the material elements of the fraudulent transaction are already in the public domain and the *qui tam* relator comes forward with additional evidence incriminating the defendant." *Id.* Nor can Shea qualify as an "original source."

*Second*, Shea failed to plead his allegations with the specificity required by Rules 8 and 9(b) of the Federal Rules of Civil Procedure. The district court declined to dismiss with prejudice on this basis because it discerned a hypothetical possibility that Shea could amend his complaint with more specifics. But even if that approach is appropriate in many cases, it is inappropriate here given Shea's explicit acknowledgment that he is relying on the hope of discovery to fill in even basic details of the alleged fraud. Shea never had insider knowledge of his allegations against Verizon, and there is no reason to think he has suddenly gained such knowledge. Allowing him to re-plead would only postpone the inevitable.

At the least, the district court was correct to dismiss this action under the first-to-file bar. Shea argues that the district court should have dismissed only his complaint, not the whole action, allowing him to proceed by amending his complaint rather than filing a new action. But that argument flies in the face of the statutory text, which provides that while a qui tam action is pending, no relator

- 16 -

may "*bring a related action* based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5) (emphasis added).  No matter how many times Shea amends his complaint in this action, he will always have *brought this action—i.e.*, filed his initial complaint—while *Verizon I* was pending.  The first-to-file bar therefore requires that the action, not just the complaint, be dismissed.

## STANDARD OF REVIEW

This Court reviews de novo the application of the first-to-file bar (*United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 119 (D.C. Cir. 2015)), the public-disclosure bar (*United States ex rel. Doe v. Staples, Inc.*, 773 F.3d 83, 86 (D.C. Cir. 2014)), and Rules 8 and 9(b) (*United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004)).  It reviews for abuse of discretion the determination whether a dismissal for insufficient pleading should be with prejudice.  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 (D.C. Cir. 1994).

## ARGUMENT

## I. THIS ACTION SHOULD HAVE BEEN DISMISSED WITH PREJUDICE UNDER THE PUBLIC DISCLOSURE BAR

The district court erred in refusing to dismiss this action with prejudice under the FCA's public disclosure bar.  The whole purpose of that bar is to prevent parasitic relators from doing what Shea did: cobbling together a complaint from the public domain and demanding a reward from the public fisc.

### A.     The Pre-2010 Version Of The Public Disclosure Bar Applies

Although Congress amended the public disclosure bar in 2010, in the course of enacting the Affordable Care Act, the Supreme Court has twice stated that the pre-2010 version applies to actions, like this one, filed prior to the amendment. *See Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 283 n.1 (2010) (amendment does not apply "to pending cases"); *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 404 n.1 (2011) (same).  This Court has said the same.  *See United States ex rel. Oliver v. Philip Morris USA Inc.*, 763 F.3d 36, 39 n.2 (D.C. Cir. 2014) (amendments "do not apply to pending suits filed before their enactment"); *see also United States ex rel. Estate of Cunningham v. Millennium Labs. of Cal., Inc.*, 713 F.3d 662, 669 n.5 (1st Cir. 2013); *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 n.6 (5th Cir. 2011).

Resisting those holdings, the district court concluded that what matters is not the filing date of the action but the date of the underlying conduct, such that "the pre-amendment version of [the] public disclosure bar applies to claims arising from [Verizon's] conduct before March 23, 2010," the effective date of the amendment, "and the amended version of the public disclosure bar applies to conduct based on post-March 23, 2010 conduct."  JA341.  But even if the district court were correct to focus on the timing of the underlying conduct, that would not require reliance on

different versions of the bar for different periods; rather, the pre-2010 version of the bar applies where, as here, all "'the *relevant* conduct'"—"the public disclosures," the defendant's entry into a contract with the government, and "the majority of and the most important aspects of the allegedly fraudulent conduct"— predated the amendment. *United States ex rel. Carter v. Bridgepoint Educ., Inc.*, 2015 WL 4892259, at *3 (S.D. Cal. Aug. 17, 2015) (emphasis added), *appeal docketed*, No. 15-56439 (9th Cir. Sept. 21, 2015). At the very least, the pre-2010 version of the bar governs all false claims alleged to have been made prior to the effective date of the amendment (March 23, 2010).

### B.    It Is Immaterial Which Version Of The Bar Applies

At any rate, it is immaterial which version of the public disclosure bar applies, because the pre- and post-amendment versions of the bar would apply identically in this case.

As the district court acknowledged, there is no substantive difference between the pre- and post-amendment standards. *See* JA343. The pre-amendment version provides, as relevant, that "[n]o court shall have jurisdiction over" a qui tam action "based upon the public disclosure of allegations or transactions … from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A) (2009). The post-amendment version similarly provides, as

relevant, that a "court shall dismiss" a qui tam action, "unless opposed by the Government, if substantially the same allegations or transactions … were publicly disclosed … from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A) (2012).[1]  If Shea's action is precluded by the pre-amendment version of the public disclosure bar, it is equally precluded by the post-amendment version.

The district court adverted to only one *non*-substantive difference between the pre- and post-amendment versions of the bar:  The pre-amendment bar is jurisdictional, while the post-amendment bar is not.  JA341-342.  But that difference does not affect the outcome in this case.

It is true, as the district court observed, that a court generally may not consider facts beyond the complaint in deciding a non-jurisdictional motion to dismiss.  But courts routinely have applied the post-amendment version of the public disclosure bar at the motion-to-dismiss stage; they have simply treated the motion to dismiss as arising under Rule 12(b)(6) (failure to state a claim) rather than Rule 12(b)(1) (lack of jurisdiction).  *See United States ex rel. Advocates for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*, 816 F.3d 428, 433 (6th Cir. 2016);

---

[1]     The United States has not intervened in this action and has taken no position on the viability of Shea's claims; when Verizon initially moved to dismiss the action on public disclosure and other grounds, the government requested only that any dismissal "be without prejudice to the United States."  JA93.

*United States ex rel. Beauchamp v. Academi Training Ctr.*, 816 F.3d 37, 40 (4th Cir. 2016); *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 300 (3d Cir. 2016); *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 810 (11th Cir. 2015).  In doing so, some courts have considered materials beyond the complaint without comment (*Advocates for Basic Legal Equal.*; *Beauchamp*); others have relied on a theory of judicial notice (*Moore*, 812 F.3d at 301 n.7; *Osheroff*, 776 F.3d at 811-812 & n.4; *see also United States ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1083 (8th Cir. 2014)).

In addition, as the district court recognized (JA343)—and as Verizon suggested in briefing below (Dkt. 79 at 16 n.9)—the court could equally well have applied the public disclosure bar simply by treating Verizon's motion to dismiss as a motion for summary judgment (as this Court could do as well).  *See* Fed. R. Civ. P. 12(d) (allowing conversion); *Fernandez v. Centerplate/NBSE*, 441 F.3d 1006, 1009-1010 (D.C. Cir. 2006) (converting dismissal to summary judgment on appeal).

## C.     The Material Elements Of The Alleged Fraud Were Disclosed By Publicly Available Contracts And Mock-Up Invoices

This action is precluded by either the pre-amendment or the post-amendment version of the public disclosure bar.  As noted above (at 19-20), both versions of the bar forbid qui tam actions based on "allegations or transactions" of fraud that

have been publicly disclosed in (among other sources) "the news media," unless the relator is an original source. 31 U.S.C. § 3730(e)(4)(A) (2009); 31 U.S.C. § 3730(e)(4)(A) (2012). Shea has not disputed (nor could he) that publicly available websites constitute "news media" for purposes of the bar. JA344 (citing *United States ex rel. Green v. Serv. Contract Educ. & Training Tr. Fund*, 843 F. Supp. 2d 20, 32-33 (D.D.C. 2012)); *see also, e.g.*, *Beauchamp*, 816 F.3d at 43 n.6 ("Courts have unanimously construed the term 'public disclosure' to include websites and online articles."). The question, then, is whether the websites on which Shea relied—disclosing the existence of the contracts in question, limited terms of certain contracts, and mock-up invoices under those contracts—disclosed the "allegations or transactions" that underlie Shea's fraud claim.[2] They clearly did.

In *Springfield Terminal*, this Court defined "allegations or transactions" of fraud as follows: "[I]f X + Y = Z, Z represents the *allegation* of fraud and X and Y represent its essential elements. In order to disclose the fraudulent *transaction* publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, *i.e.*, the conclusion that fraud has been committed." 14 F.3d

---

[2]     In Verizon's view, Shea's *Verizon I* complaint also qualifies as a preclusive public disclosure, even though it was under seal at the time Shea initially filed this action. This Court has held, however, that disclosure to the government alone does not constitute public disclosure. *United States ex rel. Oliver v. Philip Morris USA Inc.*, 763 F.3d 36, 42 (D.C. Cir. 2014). Verizon respectfully preserves this argument for potential further review.

at 654.  X and Y, the "two elements" of a fraud allegation, are "a misrepresented state of facts" and "a true state of facts."  *Id.* at 655.

As the district court recognized, there is no doubt that the "true state of facts" in Shea's claim—the allegation that Verizon's contracts with the government forbade it from imposing certain charges—was publicly disclosed. *See* JA345 (Shea's "allegations about the contracts at issue and the surcharges they prohibit mirror publicly available information.").  "The names and numbers of the contracts" at issue were "posted on publicly accessible websites," and to the extent Shea "makes specific allegations regarding the contents of certain contracts[, t]hat information, too, is available on-line."  JA345-346; *see* JA233-264 (identifying contracts in SAC ¶¶ 28(a), (c), (f), (h), (i), (j), (k), (l), and (m)); JA312-313 (identifying contract in SAC ¶ 28(e)); JA315-316 (identifying contract in SAC ¶ 28(g)); JA318-325 (identifying contract in SAC ¶ 28(d)); JA178 (discussing contract in SAC ¶ 29); JA180 (discussing contract in SAC ¶ 30); JA182, 184, 186 (discussing contract in SAC ¶¶ 32-40).  The Federal Acquisition Regulation, which Shea also invokes (SAC ¶¶ 16-26), is of course public as well.  JA346.

Contrary to the district court's view, the allegedly "misrepresented state of facts"—Verizon's supposed practice of billing the government for forbidden charges—was also publicly disclosed.  As the district court acknowledged, the SAC relies on publicly available "'mock-up' or 'training' Verizon invoices"—

invoices that, according to Shea, revealed "the 'billing format' for certain

Government contracts" and thus "'provide[d] [him] with enough information to

know what surcharges [were] charged.'"  JA346-347.  The court believed those

invoices were insufficient to disclose a material element of Shea's fraud claim, on

the theory that the invoices on their own would not have supported a finding that

Verizon "*actually submitted* unlawful charges to the Government."  JA347

(emphasis added).

But that analysis misinterprets the legal standard.  What matters, this Court

has held, is not whether "the relevant public disclosures irrefutably prove a case of

fraud" but simply whether they "raise the *inference* of fraud"—in other words,

"whether the publicly disclosed information … could at least have alerted law-

enforcement authorities to the *likelihood* of wrongdoing."  *United States ex rel.*

*Settlemire v. District of Columbia*, 198 F.3d 913, 918-919 (D.C. Cir. 1999)

(emphases added) (internal quotation marks omitted).  Public disclosures preclude

qui tam litigation if they "enable the government adequately to investigate the

case," whether or not they complete the government's investigation.  *United States*

*ex rel. Doe v. Staples, Inc.*, 773 F.3d 83, 88 (D.C. Cir. 2014) (internal quotation

marks omitted).  As long as public disclosures "set government investigators on the

trail of fraud" (*Springfield Terminal*, 14 F.3d at 655), they remove the justification

for a qui tam bounty.  *See id.* at 654 ("When X *and* Y surface publicly, … there is

little need for qui tam actions, which would tend to be suits that the government

presumably has chosen not to pursue or which might decrease the government's

recovery in suits it has chosen to pursue."); *United States ex rel. Davis v. District*

*of Columbia*, 679 F.3d 832, 836 (D.C. Cir. 2012) (disclosures sufficient to trigger

bar when "the information 'could at least have alerted law-enforcement authorities

to the likelihood of wrongdoing'"); *see also Graham Cty. Soil & Water*

*Conservation Dist.*, 559 U.S. at 312 n.9 (collecting decisions that "look to whether

the Federal Government is 'on notice' of alleged fraud before concluding that a

particular source is a 'public disclosure of allegations or transactions'").[3]

It is difficult to see how the mock-up invoices, which, according to Shea,

showed taxes and surcharges allegedly forbidden by publicly disclosed contracts,

were not sufficient at least to "set government investigators on the trail of" Shea's

fraud allegations (*Springfield Terminal*, 14 F.3d at 655).  Even if the mock-ups

would not on their own have been sufficient to *prove* a fraud case, they certainly

sufficed to alert the government to the possibility of fraud if Shea's allegations

about the contracts were taken as true.  In ruling that the mock-up invoices were

insufficient to bar this action, the district court ignored this Court's admonition that

---

[3]     *See also, e.g.*, *United States v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 782
F.3d 260, 266 (6th Cir. 2015); *United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d
1014, 1020 (9th Cir. 1999); *United States ex rel. Fine v. Sandia Corp.*, 70 F.3d
568, 572 (10th Cir. 1995).

public disclosures need not "irrefutably prove a case of fraud" to preclude a qui tam action.  *Settlemire*, 198 F.3d at 919.

### D.    Shea's Supposed "Insider" Contributions Were At Most Cumulative

Shea claims to have supplemented the public information with three types of purported insider knowledge, which he claims enabled him to understand the import of the public disclosures.  First, he alleges, he "received an MCI document" in 2004—years before some of the contracts listed in the SAC were even entered into, and two years before Verizon and MCI merged (JA48)—"indicating that the company was charging the government" for certain taxes and surcharges.  JA47.  Second, he claims to have learned from "[a] former Verizon employee … that Verizon did not have a separate billing system for federal customers and commercial customers, and that Verizon's billing system did not have the capability to turn off the surcharges that were generally charged to all customers."  JA52.  Third, he claims to have relied on "his extensive consulting experience" with large corporations.  *Id.*; *see* JA47.  All this, however, was either cumulative of the public disclosures or legally irrelevant.

*First*, the district court was incorrect to regard the 2004 MCI document and the ex-employee tip as enabling Shea to decode the mock-up invoices.  The court's rationale was that without those sources of information, "the mock-up invoices alone would probably not give rise to an inference that the Government was

- 26 -

actually billed." JA348. But as explained above, the invoices did not need to support "an inference that the Government *was actually billed*" (*id.* (emphasis added)) to preclude Shea's suit; they needed only to "have alerted law-enforcement authorities to the likelihood of wrongdoing." *Settlemire*, 198 F.3d at 918. And that, they did. Not only were the mock-up invoices available to the government; it of course had the actual invoices as well, to compare to Shea's allegations of improper billing. At best, then, the 2004 MCI document and the ex-employee tip offered Shea *additional* evidence to support his fraud claim. But as this Court has repeatedly held, "a *qui tam* action cannot be sustained where all of the material elements of the fraudulent transaction are already in the public domain and the *qui tam* relator comes forward with additional evidence incriminating the defendant." *Springfield Terminal*, 14 F.3d at 655. The public disclosure "inquiry focuses not on the additional incriminating information a relator supplies, but instead on whether 'the quantum of information already in the public sphere' was sufficient to 'set government investigators on the trail of fraud.'" *Staples*, 773 F.3d at 87. Here, for the reasons explained above, the "information already in the public sphere" was more than sufficient to alert the government to the alleged scheme of fraud. Shea's additional insider information cannot resuscitate his suit.

*Second*, any expertise Shea brought to bear as an industry insider is equally irrelevant. In his deposition, Shea referred to his corporate consulting experience

- 27 -

as "the secret sauce" that enables him to understand how "it all comes together." JA168; *see also, e.g.*, JA184 ("[A] lot of my knowledge in terms of what this stuff is from my industry stuff."); JA175-176 (explaining how "industry knowledge" helps him understand the bills and contracts). But, as this Court has held more than once, a relator cannot overcome the public disclosure bar by using his "unique expertise or training to conclude that the material elements already in the public domain constitute a false claim." *United States ex rel. Findley v. FPC-Boron Emps.' Club*, 105 F.3d 675, 688 (D.C. Cir. 1997), *abrogated on other grounds by Rockwell International Corp. v. United States*, 549 U.S. 457 (2007); *see Springfield Terminal*, 14 F.3d at 655 ("Expertise … would not in itself give a *qui tam* plaintiff the basis for suit when all the material elements of fraud are publicly available, though not readily comprehensible to nonexperts."). Shea's action would therefore be barred even if it were true that his consulting experience was necessary to understand the online contracts and mock-up invoices.

*Staples* is on all fours with this case, and illustrates why Shea's action would be barred even if he had provided *some* non-public information. The *Staples* relator claimed that several companies had misrepresented the origin of pencils they had imported from China, in an effort to avoid antidumping duties. Like Shea, the *Staples* relator claimed to be an "industry insider," with sufficient knowledge to conduct "his own investigation." 773 F.3d at 85. Like Shea, he

claimed to have deployed his industry knowledge to recognize a fraud hiding in plain sight, by consulting publicly available shipping manifests and examining pencils for "'giveaway characteristics'" that had been "described in publicly accessible reports." *Id.* at 85-86. And like Shea, he claimed to have "confirmed" his fraud allegations "[w]ith the help of pencil-industry informants." *Id.* at 85. But because the shipping manifests and reports had been publicly disclosed, the court held, it made no difference that the relator had gathered information from industry insiders or that his complaint "catalogue[d] characteristics of Chinese pencils that [were] unmentioned in the [public] reports." *Id.* at 87. Because "the material elements of the fraud, X and Y, were already public," the relator's "private intelligence [could not] defeat" the public disclosure bar. *Id.* at 88. Precisely the same is true here.

### E.     Shea Cannot Qualify As An Original Source

Under the pre- and post-amendment versions of the public disclosure bar, a relator whose suit would otherwise be barred by publicly disclosed information may nonetheless proceed if he is an "original source" of that information. Shea does not qualify as an original source under either version of the bar.

The pre-amendment statute defined an "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the

- 29 -

Government before filing an action … based on the information." 31 U.S.C.

§ 3730(e)(4)(B) (2009). "Direct" knowledge is knowledge "'marked by absence of

an intervening agency'" (*Springfield Terminal*, 14 F.3d at 656)—in other words,

"first-hand knowledge" (*Findley*, 105 F.3d at 690). "'Independent knowledge' is

knowledge that is not itself dependent on public disclosure." *Springfield Terminal*,

14 F.3d at 656. Shea could thus have qualified as an original source of the publicly

disclosed information about Verizon's contracts and supposed billing practices if,

for example, he had acquired copies of the contracts and invoices first-hand—

without relying on any website—and had disclosed them to the government before

filing suit. But Shea makes no claim to have satisfied any of those requirements.

On the contrary, he admits that what little knowledge he has of the contracts and

billing practices comes from public websites. *See supra* p. 9. He therefore cannot

qualify as an original source under the pre-amendment version of the bar.

Nor can Shea qualify under the post-amendment version of the bar, which

defines an "original source" as

> an individual who either ([1]) prior to a public disclosure under
> subsection (e)(4)(a), has voluntarily disclosed to the Government the
> information on which allegations or transactions in a claim are based,
> or (2) who has knowledge that is independent of and materially adds
> to the publicly disclosed allegations or transactions, and who has
> voluntarily provided the information to the Government before filing
> an action under this section.

- 30 -

31 U.S.C. § 3730(e)(4)(B) (2012).  Shea cannot qualify under the first clause, since he cannot have disclosed to the government the information he learned from the websites before the information even appeared on those websites.  And he cannot qualify under the second clause because, even if the 2004 MCI document and the ex-employee tip could constitute "knowledge that is independent of" the public disclosures, and even if Shea provided that knowledge to the government before filing suit (which is unclear), it does not "materially add[]" to what Shea found online.

To the contrary, those sources add little if anything to what Shea found online.  The 2004 document listed taxes and surcharges, but Shea admitted that those taxes and surcharges were not imposed under all of the contracts at issue. *See* JA191 ("Some of them will be, some of them won't be.").  Indeed, Shea admitted that the document pertained only to MCI's FTS contract, which was at issue in *Verizon I* but is *not* one of the contracts at issue in this case.  JA167-168, 171, 189.  And as noted above, the document predated Verizon's merger with MCI (JA48).  The MCI document thus does nothing to flesh out Shea's fraud allegations in this case.  The same is true of the ex-employee's statement that "Verizon's billing system did not have the capability to turn off the surcharges that were generally charged to all customers."  JA52.  Shea acknowledged in his deposition that Verizon has multiple billing systems (JA199), that the ex-employee did not

identify which one he was discussing (JA199, 203), and that Verizon actually *does* have the ability both to turn off certain surcharges and to achieve the same result by crediting back the surcharges (JA207-208).  Thus, none of Shea's insider information "materially adds" to what he learned online.  *Cf. United States ex rel. Paulos v. Stryker Corp.*, 762 F.3d 688, 694 (8th Cir. 2014) ("With the key facts to [relator's] FCA claims … already thoroughly revealed and without any clear sense about what new information [relator] brings to the table, we cannot say his knowledge (even if gained early and independently) materially contributes anything of import to the public knowledge about the alleged fraud."); *Osheroff*, 776 F.3d at 815 (similar); *Kraxberger*, 756 F.3d at 1080 (similar).

Because the material elements of Shea's fraud claim were disclosed on publicly available websites, because Shea's purported inside information did not materially add to what he had found online concerning the contracts actually at issue in this case, and because Shea was not an original source, the district court should have dismissed this action with prejudice.

## II.  THIS ACTION SHOULD HAVE BEEN DISMISSED WITH PREJUDICE BECAUSE SHEA FAILED TO PLEAD HIS ALLEGATIONS WITH SPECIFICITY

Alternatively, the district court should have dismissed this action with prejudice because the SAC fails to comply with the pleading standards of Rules 8 and 9(b) of the Federal Rules of Civil Procedure and because there is no realistic possibility that Shea could cure the deficiency by amending his complaint.

- 32 -

### A.     The SAC Failed To Identify Any Details Of The Alleged Fraud

To comply with Rule 8, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"; rather, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  To comply with the heightened, fraud-specific standard of Rule 9(b), moreover, the complaint must "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  "Combining Rules 8 and 9(b)," this Court has held, a relator must "'state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud,'" as well as "identify[ing] individuals allegedly involved in the fraud."  *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004).  In other words, a relator must identify the "who," "what," "where," and "when" of the alleged fraud.  *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 124 (D.C. Cir. 2015).  The SAC falls well short of that mark.

*First*, it fails to allege facts sufficient to show that the twenty contracts at issue actually forbade the supposedly fraudulent charges.  Unlike the *Verizon I* complaint, which set forth the relevant provisions of the two contracts at issue

(JA219-225), the SAC says almost nothing about the twenty contracts at issue here. Indeed, it provides *no* information about seventeen of the contracts, beyond their names and numbers. As to those contracts, there should be no doubt whatsoever that dismissal is required. And for the remaining three contracts, the SAC is nearly as inadequate; it offers only threadbare information having nothing to do with whether the contracts actually forbade the charges in question. Shea conceded below that he "cannot allege with certainty whether *any* particular contracts at issue permitted the Non-Allowable Tax-Like Surcharges." Dkt. 83 at 31 (emphasis added). That is on its own sufficient to doom his action.

*Second*, the SAC alleges no facts sufficient to indicate that Verizon actually imposed any forbidden charges. The SAC alleges only that (1) Shea learned from a former Verizon employee that Verizon supposedly "did not have a separate billing system for federal customers and commercial customers, and that Verizon's billing system did not have the capability to turn off the surcharges that were generally charged to all customers" (JA52); and (2) Shea received a 2004 MCI document supposedly showing that MCI was charging certain fees under an *unspecified* contract (JA47). Even setting aside Shea's deposition, which sharply undercut their value (*see supra* pp. 31-32), these purported insider sources cannot support Shea's sweeping allegation that Verizon imposed forbidden taxes and surcharges under *each* of the twenty contracts at issue. Again, Shea has effectively

- 34 -

conceded as much, informing the district court that he lacks "documents demonstrating which surcharges" Verizon imposed "under each of the contracts." Dkt. 83 at 32. Even if Shea did not need to plead "the precise details of individual claims" submitted to the government (*Heath*, 791 F.3d at 126), he did have to "allege[] 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *Id.* The relator in *Heath* did that by "set[ting] forth in … detail" a "centralized and institutional" plan of fraud, complete with "copies of [corporate] training materials" documenting the plan. *Id.* at 123-124. Shea has provided nothing of the sort.

*Third*, the SAC fails to identify *who* made the allegedly fraudulent claims, let alone that they did so with the requisite scienter. *See Williams*, 389 F.3d at 1256 ("We … require pleaders to identify individuals allegedly involved in the fraud."); *United States v. Science Applications Int'l Corp.*, 626 F.3d 1257, 1271 (D.C. Cir. 2010) ("Strict enforcement of the FCA's scienter requirement will … help to ensure that ordinary breaches of contract are not converted into FCA liability."). A relator may identify a corporation as the "person" who committed fraud. *Heath*, 791 F.3d at 125. But to do so, he must "alleg[e] with specificity how the company itself institutionalized and enforced its fraudulent scheme"—in *Heath*, for example, by providing "corporate training materials and audit reports."

- 35 -

*Id.* The relator must, in other words, allege facts sufficient to infer "that corporate levers were pulled," even if not "who pulled them." *Id.* The SAC fails to do so. It leaves completely unclear whether any improper billing that may have occurred was a deliberate act of any of the four corporations named as defendants, as opposed to the inadvertent act of one or more individuals.

Indeed, the fact that four separate Verizon subsidiaries are defendants to this litigation makes it particularly absurd to regard the 2004 MCI document and the statement of a "former Verizon employee" as sufficient for Shea's claims to proceed. For example, Cellco Partnership (doing business as Verizon Wireless), which originated as a joint venture between Verizon and Vodafone, had no connection to the former MCI. *See* JA49 (Cellco began operating in 2000); JA48 (Verizon merged with MCI in 2006).

*Fourth*, Shea fails to identify *when* the alleged fraud occurred. In *Williams*, the Court held that a qui tam complaint failed to satisfy Rule 9(b) where its "allegations regarding the 'time … of the false misrepresentations'" were limited to "[s]everal paragraphs nebulously alleg[ing] that the period in question [was] 'at least through 2002.'" 389 F.3d at 1256-1257. The *Williams* complaint at least stated an end date for the alleged fraud; Shea's SAC fails to do even that. It makes no reference *at all* to the dates of any supposedly fraudulent charges (other than to state that they occurred both before and after the 2010 amendments to the FCA).

"The history of the False Claims Act 'qui tam provisions demonstrates repeated congressional efforts to walk a fine line between encouraging whistle-blowing and discouraging opportunistic behavior'"—in other words, to achieve the "'twin goals of rejecting suits which the government is capable of pursuing itself, while promoting those which the government is not equipped to bring on its own.'" *United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 217 (D.C. Cir. 2003). The pleading requirements of Rules 8 and 9(b) serve a substantive purpose in this context, not merely a formalistic one:  They prevent a relator from seeking a bounty without offering the government specific knowledge of fraud.  The rules thus serve to deny unwarranted windfalls to relators like Shea.

### B.     Shea Would Have No Basis To Amend His Complaint

Without addressing whether the SAC complied with Rules 8 and 9(b), the district court determined that Shea would be entitled to amend his pleading if it were insufficient.  Leave to amend can be denied for reasons including "futility" and "'repeated failure to cure deficiencies by amendments previously allowed'"— grounds that would seem to apply here in ample measure.  *Atchinson v. District of Columbia*, 73 F.3d 418, 425 (D.C. Cir. 1996).  But the district court determined that amendment would be permitted here because it was "*possible* that three years after filing his SAC, Shea [would] be able to add additional consistent allegations." JA359 (emphasis added).

- 37 -

The district court's faith was unwarranted, and not only because it would be surprising if Shea had managed to learn in the past three years the kinds of specifics he did not manage to learn in the prior five (from his 2007 complaint in *Verizon I* to his 2012 amended complaint in this case). The key problem with the district court's rationale is that it contradicts Shea's own position. Shea never argued below that, to the extent his complaint falls short of the pleading standards, he could avail himself of the opportunity to add specifics by amendment. To the contrary, he argued that he bears *no* obligation to plead the specifics of the alleged fraud because Verizon declined to share with him the details of its contracts and billing practices. *See* Dkt. 83 at 26-28, 31-32. By suggesting that his ignorance is Verizon's fault, Shea made clear that amendment would be futile.

"[A] qui tam relator may not present general allegations in lieu of the details of actual false claims in the hope that such details will emerge through subsequent discovery." *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 231 (1st Cir. 2004), *abrogated on other grounds by United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40 (1st Cir. 2009); *see also, e.g.*, *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 380 (4th Cir. 2008) ("[I]f allowed to go forward, Relators' FCA claim would have to rest primarily on facts learned through the costly process of discovery. This is precisely what Rule 9(b) seeks to prevent."); *Bly-Magee v. California*, 236 F.3d

1014, 1018 (9th Cir. 2001) ("Rule 9(b) serves … 'to deter the filing of complaints as a pretext for the discovery of unknown wrongs[.]'"); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 789 (4th Cir. 1999) ("The 'clear intent of Rule 9(b) is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed.'").  Indeed, the universal rule that plaintiffs may not "learn the complaint's bare essentials through discovery" is "*especially*" important in FCA cases, in which the relator—who is not even "the real victim"— seeks a "windfall" for providing insider information.  *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1313 n.24 (11th Cir. 2002) (emphasis added). Shea is right to think the only way he could plead sufficient allegations would be if Verizon handed over to him all the information he does not know—but that cuts against him, not in his favor.

Nor can Shea excuse his non-compliance with Rule 9(b) by asserting that "'the necessary information lies within [Verizon's] control'" (*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994)).  That is the standard for pleading on information on belief, but "standards for pleading on information and belief must be construed consistent with the purposes of Rule 9(b), which attempts in part to prevent the filing of a complaint as a pretext for the discovery of unknown wrongs." *Id.* (brackets and internal quotation marks omitted).  "To jettison the particularity requirement simply because it would facilitate a claim by

an outsider is hardly grounds for overriding the general rule, especially because the FCA is geared primarily to encourage insiders to disclose information necessary to prevent fraud on the government." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010); *see also United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 559-560 (8th Cir. 2006) (rejecting argument that court should apply a "relaxed pleading standard" because "information concerning the alleged fraud [was] uniquely within the defendants' control").

Given Shea's position that he cannot learn the specifics of the fraud he alleges without obtaining materials from Verizon, it was an abuse of discretion for the district court to speculate that Shea might have learned those details on his own. Shea's own contentions demonstrate that he is incapable of filing a new complaint that would comply with Rules 8 and 9(b). This Court should therefore remand for this action to be dismissed with prejudice.

## III.    AT A MINIMUM, THE DISTRICT COURT WAS CORRECT TO DISMISS THIS ACTION UNDER THE FIRST-TO-FILE BAR

Even if the district court were correct not to dismiss this action *with* prejudice, Shea overreaches in arguing that the court erred by dismissing the action *without* prejudice under the first-to-file bar. Shea does not even try to explain how his arguments can be squared with the text of the statute, and his position would undercut the purpose of the bar as well.

## A.     The Plain Text Of The First-To-File Bar Requires Dismissal Of The Action, Not Just The Complaint

This Court's interpretation of a statute "'begins with the statutory text, and ends there as well if the text is unambiguous.'"  *Janko v. Gates*, 741 F.3d 136, 139-140 (D.C. Cir. 2014).  The text of the first-to-file bar unambiguously requires that Shea's action be dismissed.

The bar provides that "[w]hen a person brings an action under" the FCA, "no person other than the Government may intervene or *bring* a related action based on the facts underlying the pending action."  31 U.S.C. § 3730(b)(5) (emphasis added).  This Court previously held (JA121-123)—and Shea does not now dispute—that this action is "related" to *Verizon I*.  All agree that *Verizon I* remained "pending" when Shea filed the initial complaint in this action.  And "the phrase 'bring a civil action' means to *initiate* a suit"—*i.e.*, to file the initial complaint.  *Chandler v. D.C. Dep't of Corr.*, 145 F.3d 1355, 1359 (D.C. Cir. 1998) (emphasis added); *see also, e.g.*, *Goldenberg v. Murphy*, 108 U.S. 162, 163 (1883) ("A suit is brought when in law it is commenced[.]"); *Black's Law Dictionary* (10th ed. 2014) (defining "bring an action" as "[t]o sue" or "institute legal proceedings").[4]  Thus, the first-to-file bar precludes this action because Shea was

---

[4]     Shea suggests (at 18), in the context of an argument about statutory purpose, that a relator is not "free to actually 'bring' [an] action" unless and until the government chooses not to intervene, at which point the "relator can actually serve [the] complaint and proceed with litigation."  He cites no decision ever to have

forbidden to "bring" it, by filing the initial complaint, while a related action remained pending.

Shea argues that he should be permitted to escape the bar because he amended the complaint after *Verizon I* was no longer pending. But, as the district court correctly observed, "[w]hat offends the first-to-file bar is the bringing of the action (*i.e.*, filing an initial complaint), not the failing to amend a complaint" once a prior related action has been dismissed. JA354. "No matter how many times [Shea] amends his Complaint," the district court noted, "it will still be true that he 'br[ought] a related action based on the facts underlying the [*then*] *pending* action.'" JA356.

The distinction between a complaint and an action is well established. *See, e.g.*, *Ciralsky v. CIA*, 355 F.3d 661, 666 (D.C. Cir. 2004) (distinguishing between "the dismissal without prejudice of a *complaint*" and "[t]he dismissal without prejudice of an *action*").[5] And Congress well understood the difference between a

---

interpreted the phrase "bring an action" in that way, and for good reason. The authorities make clear that a relator "brings" his action when he files the initial complaint. *See, e.g.*, *Chandler*, 145 F.3d at 1359; *Goldenberg*, 108 U.S. at 163.

[5]     Shea protests that *Ciralsky* was the authority on which "the district court principally relied" and that it did so because "Verizon stretched *Ciralsky* far beyond its holding or analysis" to argue that it controlled this case. Br. 16-17; *see id.* at 8 ("Verizon twisted [*Ciralsky*'s] holding"). On the contrary, Verizon cited *Ciralsky* only once in its opening memorandum before the district court and once in its reply, both times for the limited and straightforward proposition that

"complaint" and an "action"; indeed, it used those words distinctly in an adjacent provision. *See* 31 U.S.C. § 3730(b)(2) ("The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information."). The Court therefore cannot disregard Congress's choice to use the word "action," not the word "complaint," in describing what is barred by a prior related suit. *See, e.g.*, *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176-177 (1994). In this as in all cases, the Court "'must presume that [Congress] says in a statute what it means and means in a statute what it says there.'" *Performance Coal Co. v. Fed. Mine & Safety & Health Review Comm'n*, 642 F.3d 234, 238 (D.C. Cir. 2011).

Numerous courts have rejected Shea's interpretation as flatly contrary to the statutory text. *See United States ex rel. Soodavar v. Unisys Corp.*, 2016 WL 1367163, at *7-10 (E.D. Va. Apr. 5, 2016); *United States ex rel. Carter v. Halliburton Co.*, 2015 WL 7012542, at *11 (E.D. Va. Nov. 12, 2015) ("The plain text of the first-to-file statute indicates that an amendment will not cure the first-to-file bar."), *appeal docketed*, No. 16-1262 (4th Cir. Mar. 14, 2016); *United States ex rel. Carter v. Halliburton Co.*, 2016 WL 634656, at *2 (E.D. Va. Feb. 17, 2016) (declining to reconsider that holding); *United States ex rel. Moore v. Pennrose Props., LLC*, 2015 WL 1358034, at *12-15 (S.D. Ohio Mar. 24, 2015); *United*

---

dismissing an action is different from dismissing a complaint, and that is the proposition for which the district court invoked *Ciralsky*. JA355-356.

*States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 782 F. Supp. 2d 248, 259-260 (E.D. La. 2011) (interpreting the text of the first-to-file bar "as imposing certain requirements that must be met at the time the suit begins").

Those courts got it right.  The statute forbids "bring[ing] a related action" while a prior FCA action is pending, which is precisely what Shea did when he initiated this action during the pendency of *Verizon I*.  As the district court recognized, Shea can "cure" that "defect" only by "fil[ing] a new action," not by amending the complaint in this action.  JA356.

### B.    Shea's Arguments Fail To Give Meaning To The Statutory Text

Shea's brief addresses everything but the statutory text.  None of his scattershot arguments can overcome the clear statutory text.

*First*, Shea relies (at 10-11) on this Court's holding in *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112 (D.C. Cir. 2015), that the first-to-file bar is not jurisdictional.  But that holding, which the district court considered carefully (JA351-354), is irrelevant.  The first-to-file bar requires dismissal of this action because Shea brought it during the pendency of *Verizon I*; all *Heath* says about the matter is that the dismissal should be under Rule 12(b)(6), for failure to state a claim, rather than Rule 12(b)(1), for lack of jurisdiction.  Indeed, *Heath* states as much in addressing this very case.  *See* 791 F.3d at 119 ("Confronting the jurisdictional question was not necessary in *Shea* because the only issue presented

- 44 -

on appeal was whether the district court properly dismissed the case as barred by the first-to-file rule. Even if the district court wrongly characterized its dismissal as jurisdictional, we could sustain that judgment for failure to state a claim under Rule 12(b)(6).").

*Second*, Shea relies (at 11-12) on *Rockwell International Corp. v. United States*, 549 U.S. 457 (2007), in which the Supreme Court held that a relator whose action is otherwise precluded by the public disclosure bar must satisfy the original-source exception not just with respect to his initial complaint but with respect to the allegations in any amended complaint. If not for that rule, the Court observed, a relator could "plead a trivial theory of fraud for which he had some direct and independent knowledge and later amend the complaint to include theories copied from the public domain or from materials in the Government's possession." *Id.* at 473. Shea's emphasis on *Rockwell* is difficult to reconcile with his focus on *Heath*; given that the first-to-file bar is non-jurisdictional, as *Heath* held, it is hard to see why *Rockwell*'s jurisdictional analysis is relevant at all. Nothing in *Rockwell* addresses the text of the first-to-file bar, and certainly nothing in *Rockwell* explains how an action *brought* during the pendency of a related action, and thus precluded by the bar, could be rescued by amendment.[6]

---

[6]     Shea similarly misses the mark in relying (at 11) on the rule "'that once an amended complaint is filed, it supersedes the original complaint.'" As explained by the district court opinion from which Shea quotes, that rule means simply that

Even if the first-to-file bar were jurisdictional, as some other courts have held, *Rockwell* still would not help Shea.  *Rockwell* did not hold, as Shea suggests, that an amendment could *create* jurisdiction not conferred by the original complaint; it simply recognized that a relator, like any other plaintiff, may plead himself *out* of jurisdiction by amending his complaint.  That is why numerous courts have held that *Rockwell* does not support Shea's reading of the first-to-file bar.  *See Soodavar*, 2016 WL 1367163, at *8; *Carter*, 2015 WL 7012542, at *12; *Moore*, 2015 WL 1358034, at *15; *Branch Consultants*, 782 F. Supp. 2d at 261-262.

*Third*, Shea relies on *United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1 (1st Cir. 2015), *petition for cert. filed* (Apr. 22, 2016) (No. 15-1309), in which the First Circuit held that a relator could potentially salvage his action by supplementing the complaint, under Federal Rule of Civil Procedure 15(d), to reflect the dismissal of a prior related action.  *Id.* at 6.  *Gadbois* of course does not bind this Court; it is relevant only to the extent of its power to persuade.  And it is profoundly unpersuasive.

---

"the parties must direct any dispositive motions only at the allegations and causes of action included in the most recently filed complaint."  *Pinson v. U.S. Dep't of Justice*, 69 F. Supp. 3d 108, 113 (D.D.C. 2014).  It does not mean that filing an amended complaint is the same as "bringing" an action.  *See, e.g.*, *United States ex rel. Dhillon v. Endo Pharm.*, 617 F. App'x 208, 213 (3d Cir. 2015) ("Although an amended complaint supersedes an original complaint, … the filing of an amended complaint does not begin a new action; it is a continuation of the original action.").

First, as two district courts have observed in declining to follow it, *Gadbois* pays no attention to the text of the statute.  *See Soodavar*, 2016 WL 1367163, at *9 (rejecting *Gadbois* as "unpersuasive" because "it relies on distinguishable cases while failing to adhere to the plain text of § 3730(b)(5)"); *Carter*, 2016 WL 634656, at *2 (explaining that *Gadbois* "did not give sufficient weight to the plain language of 31 U.S.C. § 3730(b)(5)").  Second, whether or not *Gadbois* is correct that *some* defects in an original complaint can be remedied by supplementation or amendment, it does not explain—or even try to explain—how supplementation or amendment could rescue from dismissal a qui tam action "brought" during the pendency of a related action, where the statute expressly focuses on the timing of that initial complaint.[7]

Other courts have recognized that while certain defects in an initial complaint can be remedied by supplementing the complaint under Rule 15(d), supplementation cannot cure defects the governing statute identifies as fatal.  In *Central Pines Land Co. v. United States*, 697 F.3d 1360 (Fed. Cir. 2012), for

---

[7]      Shea also invokes three district court opinions that have allowed relators to overcome the first-to-file bar by amending their complaints after the dismissal of the first-filed actions.  *See* Br. 12 n.26 (citing *United States ex rel. Boise v. Cephalon, Inc.*, 2016 WL 398014, at *4-5 (E.D. Pa. Feb. 2, 2016); *United States ex rel. Kurnik v. PharMerica Corp.*, 2015 WL 1524402, at *4-6 (D.S.C. Apr. 2, 2015); *United States ex rel. Palmieri v. Alpharma, Inc.*, 928 F. Supp. 2d 840, 851-852 (D. Md. 2013)).  Those opinions are no more persuasive than *Gadbois*, and equally divorced from the statutory text, which is presumably why Shea relegates them to a footnote.

example, the Federal Circuit addressed a provision similar to the first-to-file bar—
the rule that the "Court of Federal Claims shall not have jurisdiction of any claim
for or in respect to which the plaintiff or his assignee *has pending* in any other
court any suit or process against the United States."  28 U.S.C. § 1500 (emphasis
added).  "In instances where statutes impose a prerequisite to filing which a
plaintiff has failed to meet upon filing," the court explained, "a supplemental
complaint may cure such a defect."  697 F.3d at 1365-1366.  That was true, for
example, in *Matthews v. Diaz*, 426 U.S. 67 (1976), a case on which *Gadbois*
prominently relies (*see* 809 F.3d at 5).  *Central Pines*, 697 F.3d at 1366; *see*
*Soodavar*, 2016 WL 1367163, at *9.  "By contrast, if a statute contains an express
prohibition against filing suit, then a supplemental complaint cannot cure" the
defect "existing at the onset."  *Central Pines*, 697 F.3d at 1366; *see also Black v.*
*Sec'y of Health & Human Servs.*, 93 F.3d 781, 790 (Fed. Cir. 1996) (citing *McNeil*
*v. United States*, 508 U.S. 106 (1993); *Hallstrom v. Tillamook Cty.*, 493 U.S. 20
(1989)).  Where Congress provides that suits *initiated* under certain circumstances
cannot proceed, "[i]t would defeat the purpose of the prohibition to permit a
plaintiff to file his complaint during the prohibited period and then, after the
prohibited period expired, rely on a supplemental complaint to cure the
jurisdictional defect."  *Central Pines*, 697 F.3d at 1366.

The Federal Circuit recognized that 28 U.S.C. § 1500 "falls squarely within the latter category," because "it serves as an 'express prohibition against filing claims for which another suit [is] pending.'" 697 F.3d at 1366. As a result, an action barred by § 1500 because it was filed during the pendency of related litigation "cannot be rescued by subsequent action of either party or by resolution of the co-pending litigation." *Id.* at 1367. Precisely the same is true here: Like § 1500, the first-to-file bar prohibits relators from "*bring*[*ing*] a related action based on the facts underlying [a] pending action." 31 U.S.C. § 3730(b)(5) (emphasis added). Allowing Shea to proceed by amending or supplementing his complaint after the settlement of *Verizon I* would squarely contravene the statute.

The en banc Eleventh Circuit's decision in *Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000), is equally persuasive. That case involved the rule that "[n]o Federal civil action may be *brought* by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e) (emphasis added). The question was whether § 1997e(e)'s bar "applies to lawsuits that are filed while the plaintiff is a confined prisoner but which are not decided until after he is released from confinement." 216 F.3d at 972. Surveying precedents on a range of statutes (*id.* at 972-976), the court explained that it has been "well established" "for more than a century … that 'brought' and 'bring' refer to the

- 49 -

filing or commencement of a lawsuit, not to its continuation" (*id.* at 974).  As a

result, the court held, plaintiffs who filed their action while confined could not

rescue the action from the statutory bar by amending or supplementing the

complaint after being released:

> The reason such an amendment or supplement makes no difference is
> that … the confinement status of the plaintiffs at any time after the
> lawsuit is filed is beside the point.  The status that counts, and the only
> status that counts, for purposes of section 1997e(e) is whether the
> plaintiff was a "prisoner confined in a jail, prison, or other
> correctional facility" at the time the federal civil action was
> "*brought*," i.e., when it was *filed*.  It is an undisputed historical fact
> that all of these plaintiffs were confined in a Georgia prison or
> correctional facility at the time their complaint was filed.  No
> amendment or supplement to a pleading can change a historical fact,
> and the one in question did not purport to do so.

*Id.* at 981 (emphases added).  Like the Federal Circuit, the Eleventh Circuit went

on to hold that Rule 15(d) "does not and cannot overrule a substantive requirement

or restriction contained in a statute"; while the Rule allows parties "to bring to the

attention of the court changes in the facts, … other law"—namely the statutory

bar—"determines whether those changes in the facts make any difference."  *Id.* at

982-983.  Here, as in *Harris*, "the only status that counts" for first-to-file purposes

is whether *Verizon I* was pending when Shea *brought* this action; "[n]o amendment

or supplement" can change the "undisputed historical fact" that it was.  *Id.* at 981.

    *Fourth*, Shea argues that requiring him to bring his claims in a new action,

rather than amending his complaint in this action, "'would elevate form over

substance.'" Br. 12; *see id.* at 14. But as Shea recognizes (at 19), the distinction between a new action and an amended complaint is far from a formality; it could determine which of Shea's claims (if any) can survive the statute of limitations. That is presumably an important reason Shea is pursuing this appeal.

*Finally*, Shea argues (at 17-20) that the district court's interpretation of the first-to-file bar would not promote the purposes of the bar. Even if Shea were correct about that, it would be irrelevant given the clarity of the statutory text. "It is well established that 'when the statute's language is plain,'" as it is here, "'the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004). Indeed, the Supreme Court recently adhered to a textual interpretation of the first-to-file bar notwithstanding the "practical problems" created by that interpretation. *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970, 1979 (2015).

But in any event, Shea's reading would undermine rather than advance the first-to-file bar's purposes. Shea acknowledges that the bar aims to "eliminate[] parasitic lawsuits." Br. 17; *see id.* at 17-18 & n.33 (citing numerous authorities). But his interpretation would foster an endless parade of parasitic lawsuits, just like this one. If Shea were correct, then no follow-on relator should be deterred by the prior filing of an action raising the same allegations. Follow-on relators should

stream into court, filing actions plainly prohibited by the first-to-file bar, in the hope of keeping those actions on ice and amending the complaints later on should the first-filed action happen (for whatever reason) to be dismissed. Indeed, just as the Supreme Court feared in *Rockwell* (549 U.S. at 473), follow-on relators could file bare-bones actions simply to hold a place in line, with the aim of amending them down the line to include viable allegations. That system—which would impose on the courts vastly greater "administrative burdens" than the ones Shea attributes (at 19) to Verizon's interpretation—is surely not one that Congress would have wanted to promote. As one district court has observed, "with regard to [the first-to-file bar], the purpose of which is to 'prevent' the filing of certain lawsuits, the congressional goal underlying the provision is best effectuated by strict adherence to the plain language." *Soodavar*, 2016 WL 1367163, at *9.

Verizon's interpretation of the bar is far more sensible. Nothing about Verizon's interpretation would stop follow-on relators from proceeding with their actions once a first-filed action has been dismissed. The only difference between Shea's interpretation and Verizon's is that whereas Shea would induce relators to burden already overcrowded dockets by filing wait-and-see actions, Verizon would require follow-on relators to wait to file their actions *after* the first-filed action has been dismissed. That construction not only gives effect to the statutory text; it also

promotes the statutory purpose of deterring parasitic lawsuits and inefficiency, while enabling potentially meritorious actions to proceed.

## CONCLUSION

The Court should remand for the district court to dismiss this action with prejudice.  At a minimum, the Court should affirm the judgment of dismissal without prejudice.

Respectfully submitted,

/s/  Seth P. Waxman
SETH P. WAXMAN
JONATHAN G. CEDARBAUM
DANIEL WINIK
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000
(202) 663-6363 (fax)
May 11, 2016                                       seth.waxman@wilmerhale.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2)(B).

1.      Exclusive of the exempted portions of the brief, as provided in Federal Rule of Appellate Procedure 32(a)(7)(B), the brief contains 12,817 words.

2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.  As permitted by Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/  Seth P. Waxman
SETH P. WAXMAN

May 11, 2016

# STATUTORY ADDENDUM

# TABLE OF CONTENTS

Page

31 U.S.C. §3730(b)(5)...........................................................................A1

31 U.S.C. §3730(e)(4) (2009) ...............................................................A2

31 U.S.C. §3730(e)(4) (2012) ...............................................................A2

Federal Rule of Civil Procedure 8(a)......................................................A3

Federal Rule of Civil Procedure 9(b)......................................................A3

**31 U.S.C. §3730(b)**

(b) Actions by private persons.—

(1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government.  The action shall be brought in the name of the Government.  The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

(2) A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure.  The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders.  The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

(3) The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2).  Any such motions may be supported by affidavits or other submissions in camera.  The defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure.

(4) Before the expiration of the 60-day period or any extensions obtained under paragraph (3), the Government shall—

(A) proceed with the action, in which case the action shall be conducted by the Government; or

(B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action.

(5) When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.

A1

**31 U.S.C. §3730(e)(4) (2009)**

(4)(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

**31 U.S.C. §3730(e)(4) (2012)**

(4)(A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—

> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>
> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>
> (iii) from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

A2

## Federal Rule of Civil Procedure 8(a)

(a) Claim for Relief.  A pleading that states a claim for relief must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

## Federal Rule of Civil Procedure 9(b)

(b) Fraud or Mistake; Conditions of Mind.  In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of May, 2016, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system.  I also certify that I caused the foregoing to be served by email on:

Benjamin S. Young
U.S. Department of Justice
Fraud Section, Civil Division
Ben Franklin Station
P.O. Box 261
Washington, DC 20044
benjamin.s.young@usdoj.gov

Darrell C. Valdez
U.S. Attorney's Office for the District of Columbia
555 Fourth Street, NW
Washington, DC 20530
darrell.valdez@usdoj.gov

*Attorneys for the United States*

/s/ Seth P. Waxman
SETH P. WAXMAN